UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL CASUALTY CO., | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. H-10-cv-3854 |
| | § | |
| KIVA CONSTRUCTION & ENGINEERING, | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the plaintiff's, National Casualty Co. (the "plaintiff"), motion for summary judgment (Dkt No. 23). The defendants, Kiva Construction & Engineering, Inc. ("Kiva") and Joseph McDermott ("McDermott") (collectively, the "defendants") have filed a response in opposition to the plaintiff's motion for summary judgment (Dkt. No. 27) as well as a supplemental memorandum in opposition to the plaintiff's motion (Dkt. No. 32) and the plaintiff has filed a reply (Dkt. No. 29). After having carefully evaluated the motion, response, replies, the record, the undisputed facts and the applicable law, the Court determines that the plaintiff's motion for summary judgment should be **GRANTED in part** and **DENIED in part**.

**II.   FACTUAL BACKGROUND**

The plaintiff provided Protection & Indemnity and Hull & Machinery insurance coverage to Kiva pursuant to Policy No. OMO-008714 (the "policy"), which was in effect from July 5, 2008 to July 5, 2009. The Policy provided coverage for a number of vessels owned by Kiva, including the *Marin Elizabeth*. The *Marin Elizabeth* was insured at a value of $75,000, with a per occurrence deductible of $10,000.

On September 13, 2008, Hurricane Ike made landfall near Galveston, Texas, causing severe damage to real and personal property properties throughout the Gulf-Coast region, including the plaintiff's property. Thereafter, Kiva filed a claim pursuant to the policy for the loss of several vessels including the *Marin Elizabeth*, which was deemed a constructive total loss. Due to its loss, Kiva was paid $75,000 for the *Marin Elizabeth* with the plaintiff agreeing to waive the policy's $10,000 per occurrence deductible as a gratuity.

Following the storm, the wreckage of the *Marin Elizabeth* came to rest in shallow water near a dock at Kiva's "Point Barrow Facility" on the banks of Trinity Bay near Anahuac, Texas. The channel leading from the dock to open water was silted-in, complicating removal of the wreckage. Consequently, a dispute arose between the plaintiff and Kiva regarding the proper method for removing the *Marin Elizabeth*.[1]  The parties eventually settled their dispute with Kiva agreeing to accept $710,000 from the plaintiff in full and final satisfaction of any claim related to the removal of the *Marin Elizabeth*. Pursuant to the terms of the Settlement Agreement, Kiva agreed to assume full and complete responsibility for the salvage and/or removal of the *Marin Elizabeth*.

On March 24, 2010, the plaintiff tendered Check No. 8009483 in the amount of $610,000 to Kiva as payment for its *Marin Elizabeth* claim. On March 31, 2010, the check was deposited by McDermott into Kiva's bank account at J.P. Morgan Chase Bank. Because the check exceeded $500,000, a verification of the endorsement on the check was requested by the plaintiff on April 1, 2010. The verification was not timely received from Kiva, which typically would result in rejection of the check. Through a series of clerical errors, the check was categorized as rejected when it, in fact, had been approved. The check, therefore, was honored transferring

---

[1] The Special Terms and Conditions portion of the policy included a Wreck Removal Clause.

$610,000 in funds into Kiva's account. On April 6, 2010, the plaintiff, believing that the check had been voided and/or rejected, issued Check No. 8009514 to Kiva in the amount of $610,000 as a replacement check for resolution of the *Marin Elizabeth* claim. Kiva, however, had already received $610,000 relative to its *Marin Elizabeth* claim as a result of its initial deposit that was honored. On April 8, 2010, McDermott submitted Check No. 8009514 for deposit into Kiva's Chase bank account. The check was approved with funds transferred into Kiva's account on April 9, 2010. Kiva, therefore, was paid $1,220,000 for the resolution of its *Marin Elizabeth* claim.

The plaintiff was unaware of the overpayment. On August 23, 2010, McDermott, Kiva's president and principal owner, was notified that the plaintiff had discovered its overpayment to Kiva and was demanding reimbursement. Additional demands for reimbursement were made to Kiva and McDermott on August 25, August 31, September 1, and September 16, 2010. Nevertheless, despite demand, Kiva has not tendered the funds owed to the plaintiff. Accordingly, the plaintiff commenced the instant action against Kiva and McDermott alleging claims for breach of the settlement agreement and money had and received and seeking damages including, but not limited to, immediate reimbursement and/or repayment of the $510,000 overpayment.[2]

### III.   CONTENTIONS OF THE PARTIES

#### A.   The Plaintiff's Contentions

The plaintiff contends that it is entitled to summary judgment on its claims for breach of contract and money had and received against the defendants because no genuine issue of material

---

[2] In its Complaint, the plaintiff seeks immediate reimbursement or repayment in the amount of $610,000. However, in its motion for summary judgment and its reply, the plaintiff seeks reimbursement or repayment in the amount of $510,000. Because the evidence in the record supports an overpayment in the amount of $510,000, the Court will treat the initial requested amount as abandoned.

fact exists. Specifically, it contends that Kiva settled its various hurricane damage claims against it in exchange for payment in the amount of $710,000. It argues that Kiva received and deposited two checks from it in the amount of $610,000 each, representing an overpayment to Kiva of at least $510,000. Consequently, the plaintiff contends that it is entitled to judgment as a matter of law that Kiva is liable for the overpayment.

### B. The Defendants' Contentions

The defendants, in contrast, argue that the plaintiff's motion for summary judgment should be denied. They argue that the plaintiff's overpayment errors can neither be attributed to Kiva or McDermott nor considered as a claim for breach of contract.

## IV. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v.*

*Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus,

"[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52, (1986)).

## V.     ANALYSIS AND DISCUSSION

The plaintiff moves for summary judgment in its favor on all of its claims against the defendants, namely its claims for breach of contract and money had and received. Specifically, it contends that summary judgment is appropriate because no genuine issues of material fact exist as to its claims of breach of contract and money had and received. As such, the plaintiff bears the burden of proof and is required to demonstrate that the evidence in this case is such that a reasonable juror could not return a verdict for the defendants, as non-movants. *Anderson*, 477 U.S. at 347 – 48.  The Court will consider each of the plaintiff's claims individually.

### A.     The Plaintiff's Claim for Breach of Contract

As a threshold matter, the plaintiff seeks judgment as a matter of law on its breach of contract claim against the defendants. Ordinarily, when sitting in diversity, a court applies the substantive law of the forum state. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In this case, however, the defendants contend that pursuant to the terms of the parties' settlement agreement Louisiana law controls. The plaintiff, in opposition, argues that the defendants have waived any right to assert the choice-of-law provision contained in the parties' settlement agreement. It further contends that regardless of whether Louisiana or Texas law applies, the result will be the same as the laws with respect to the claims alleged are substantially similar. This Court agrees and need not address the plaintiff's waiver argument.

In an action for breach of contract under Louisiana law, the burden of proof requires that the plaintiff establish, by a preponderance of the evidence, the elements essential to its recovery. *Adams v. Commercial Nat'l Bank in Shreveport*, 661 So.2d 636, 639 (La. App. 2 Cir. 1995) (citing *Bond v. Allemand,* 632 So.2d 326 (La. App. 1st Cir.1993), writ denied, 94–0718 (La. 03/29/94), 637 So.2d 468). To this end, a plaintiff seeking to recover on such a claim must not only prove the existence of a contract, but must also prove its breach. *See* La. Civ. Code art. 1831; *Stanton v. Tulane Univ. of La.*, 2000-0403, 777 So.2d 1242, 1249 (La. App. 4th Cir. 1/10/01). "If the terms are clear, a court will enforce the contract as written, provided the agreement is not contrary to good morals or public policy." *Bourgeois v. Dunn*, 2001-1185, 822 So.2d 708, 711 (La. App. 1 Cir. 6/21/02) (citing *First Nat'l Bank of Commerce v. City of New Orleans,* 555 So.2d 1345, 1348 (La. 1990)).

Here, the plaintiff and Kiva entered into the "Receipt and Release of All Claims And Incorporated Salvage Agreement" (the "Settlement Agreement") whereby Kiva agreed to accept the plaintiff's payment in the amount of $710,000 in exchange for a full and final release of all of its claims against the plaintiff relative to its insured vessels damaged by Hurricane Ike. In furtherance of the parties' Settlement Agreement, the plaintiff mistakenly issued two separate checks to Kiva in the amount $610,000 each, resulting in an overpayment of at least $510,000. The defendants do not dispute that the Settlement Agreement constitutes a valid agreement between the parties nor do they dispute that the plaintiff ultimately tendered two checks to Kiva totaling $1,220,000, despite being obligated to pay only $710,000 under the terms of the Settlement Agreement. Further, they do not allege that the Settlement Agreement is ambiguous.

Instead, the defendants maintain that although a valid contract exists between the plaintiff and Kiva, "there remains a substantial material question of fact regarding whether or not [the

plaintiff] performed the terms of the [parties'] agreement; that is, the initial payment of all funds for the settlement." (Dkt. No.27 at 8; *see also* Dkt. No. 32 at 4.) Nevertheless, they offer no affirmative evidence that the plaintiff did not, in fact, tender $1,220,000 to Kiva, but rather contend that the plaintiff has failed to mitigate its damages by refusing to accept their partial payments and/or refusing to agree to their reasonable repayment terms. Unfortunately, these contentions, without more, are insufficient to preclude a summary judgment in the plaintiff's favor on its breach of contract claim against Kiva as Kiva's own corporate representative not only acknowledged receipt of the plaintiff's overpayment but also confirmed Kiva's inability to proffer full repayment upon the plaintiff's demand. Specifically, McDermott testified as follows:

> Q. (By Mr. Matthews): Ultimately you became aware that both checks for $610,000 had been honored and the funds from both of those checks had been deposited or been credited to your account, correct?
>
> A. Ultimately I became aware that National Casualty or whomever had not—had not recovered their funds, yes.
>
> Q. And you were aware that those funds were in Kiva's account?
>
> A. I was aware that they still showed in the account, yes.
>
> . . .
>
> Q. I'm not talking about what was going on in your mind back in March and April of 2010, I'm not talking about May, June, July of 2010, I'm talking about right now. As we sit here today, you know that Kiva was credited $610,000 twice on both of these checks, correct, in their account?
>
> A. That's correct.
>
> Q. And you know sitting here today that there's no way that National Casualty is going to get the $610,000 that was a duplicate payment, there's no way they're going to get that back unless and until Kiva gives it to them, correct?
>
> . . .

      A.      Today.  Today, yeah.

      Q.      Why haven't you given it back?

      A.      Because we don't –we don't have it.  And I made the offer to give it back at some point.

(Dkt. No. 23, Ex. B. p. 29:3 - 33:9).

      Q.      And why is it that the full amount can't be repaid now?

      A.      Because we've used the money in our normal operating . . . .

      Q.      You don't have the cash?

      A.      That's correct.

(*Id.*, Ex. B. p. 33:14 – 19.).

Indeed, the undisputed facts establish that:  (1) a valid and enforceable agreement exists between the plaintiff and Kiva; (2) the plaintiff performed under the agreement and ultimately tendered a total payment to Kiva in the amount of $1,220,000; (3) the plaintiff has demanded the return of its overpayment from Kiva; (4) despite demand, Kiva has failed and refused to fully reimburse the plaintiff for its overpayment; and (5) the plaintiff has been damaged as a result. Based on the evidence presented, the plaintiff is undoubtedly entitled to recover its damages against Kiva in the amount of $510,000—the amount paid for which it received nothing in return.

Notwithstanding the aforementioned, it does not necessarily follow that the plaintiff is also entitled to the same recovery under a breach of contract theory against McDermott as it has failed to demonstrate that a contractual relationship existed between it and McDermott. It is also undisputed that McDermott signed the Settlement Agreement in his capacity as a corporate officer of Kiva. Moreover, no evidence has been presented establishing that a separate contract ever existed between the plaintiff and McDermott. Further, in the absence of evidence that

McDermott agreed to assume any contractual duties owed by Kiva to the plaintiff, the plaintiff's claims against McDermott fail.

### B. The Plaintiff's Claim for Money Had and Received

The plaintiff also moves for summary judgment on its claim for money had and received. Louisiana Civil Code article 2299 provides that "[a] person who has received a payment of a thing not owed to him is bound to restore it to the person from whom he received it." La. Civ. Code art. 2299.[3] Admittedly, Kiva, by way of its receipt of two checks from the plaintiff in the amount of $610,000 each, received an overpayment of $510,000, which constituted a payment of a thing not owed to it. Thus, Kiva is required to restore that amount to the plaintiff, the juridical person from whom it received the money. This "right to reimbursement conferred by article 2299 exists regardless of whether such payment was made knowingly or through error." *In re Ark-La-Tex Timber Co. Inc.*, 482 F.3d 319, 329 – 30 (5th Cir. 2007) (quoting *Am. Int'l. Speciality Lines Ins. Co. v. Canal Indem. Co.*, 353 F.3d 254, 273 (5th Cir. 2003)). Further, several Louisiana cases have held that "a mistaken payor's negligence will not bar [its] claim." *In re Ark-La-Tex Timber*, 482 F.3d at 329 (citing, *e.g., Gootee Constr. v. Amwest Sur. Ins. Co.,* 03-0144 (La. 10/10/03), 856 So.2d 1203; *DeVillier v. Highlands Ins. Co.,* 389 So.2d 1133 (La. App. 3d Cir. 1980); *Pioneer Bank & Trust Co. v. Dean's Copy Prods., Inc.,* 441 So.2d 1234 (La. App. 2d Cir. 1983); *Jackson v. State Teacher's Ret. Sys.,* 407 So.2d 416 (La. App. 1st Cir. 1981)).

In the case *sub judice*, the defendants contend that on January 11, 2011, Kiva forwarded a check to the plaintiff's counsel in the amount of $125,000, which to date has yet to be deposited and has since been rejected by it on the advice of counsel. As such, the defendants contend that the issue of the amount of overpayment is contested and precludes a summary

---

[3] The claim for money had and received does not differ considerably between Louisiana and Texas substantive law. *See Nebraska Beef, Ltd. v. KBK Fin., Inc.,* No. 4:03-CV-1486, 2006 WL 538790, at *6 n. 9 (N.D. Tex. Mar. 3, 2006).

judgment in the plaintiff's favor. This Court disagrees. Because it is undisputed that Kiva has failed to tender reimbursement of the total amount overpaid or to propose repayment terms that are acceptable to the plaintiff, it has no legal right to retain the plaintiff's overpayment and must issue a refund of the amount overpaid. In the absence of evidence that Kiva has restored the full amount of the overpayment to the plaintiff, the plaintiff is entitled to a summary judgment against Kiva on its claim for money had and received.

Its claim for summary judgment against McDermott in this regard, however, is DENIED as the settlement checks were made payable to Kiva or other corporate entities and no evidence has been proffered demonstrating that McDermott acted in any capacity other than as Kiva's corporate representative when he deposited the settlement funds.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the plaintiff's motion for summary judgment is **GRANTED in part** and **DENIED in part**. Further, the plaintiff's request for attorneys' fees is DENIED because such fees are neither authorized by statute nor any contractual provision contained in the parties' Settlement Agreement. *See Lancaster v. Petroleum Corp. of Delaware*, 491 So.2d 768, 779 (La. Ct. App.3d Cir. 1986) (reasoning that "[i]t is well recognized in the jurisprudence of this Court that as a general rule attorneys' fees are not allowed except where authorized by statute or contract.")

It is so ORDERED.

SIGNED at Houston, Texas this 11th day of January, 2012.

_____
Kenneth M. Hoyt
United States District Judge